## WEBSTER AND FORD v. HOBAN.

1813.

Feb. 24th,

*Present....All the Judges except* TODD, J.

ERROR to the Circuit Court for the district of Columbia, in a special action on the case, by the Plaintiffs in error, against the Defendant in error, for not paying the purchase money for a house sold by the Plaintiffs to the Defendant, at public auction.

The premises were publicly advertised, and set up at auction by a licensed auctioneer. On the day of sale, certain written articles, purporting to exhibit the terms, were read aloud by the auctioneer in the presence and hearing of the Defendant and others assembled upon that occasion, and the paper was also handed round and read by those present. Of those articles, three only require notice.

*[margin note:]* MUTUAL ASSU. SO'Y. *v.* KORN & WISEMILLER.

*[margin note:]* Upon a sale of land at auction, if the terms be that the purchaser shall within 30 days, give his notes with two good indorsers, and if he shall fail to comply within the 30 days, then the land to be re-sold on account of the first purchaser, the vendor cannot

WEBSTER
& FORD
*v.*
HOBAN.
_____

maintain an
action against
the vendee for
a breach of
the contract,
until a re-sale
shall have as-
certained the
deficit, altho'
the vendee
should in-
struct an at-
torney to draw
a deed, and
insert his name
as purchaser.

Art. 1st, declares that the highest bidder shall be the purchaser.

Art. 3d, requires that the purchaser should secure the purchase money, with interest included, by his promissory notes, with two approved indorsers, payable in six and twelve months.

Art. 5th, declares that the purchaser shall be allowed "thirty days to comply with the 3d article, at which "time, (in case of compliance,) he shall receive a good "and complete title to the property. On failing to com- "ply within the 30 days, the property then to be re- "sold on account of the first purchaser."

The premises were struck off to the Defendant, as the highest bidder, at the price of 4,000 dollars; whereupon the auctioneer, in the presence of the Defendant, signed a certificate, at the foot of the articles of sale, declaring him to be the purchaser at that price.

An attorney was employed to draw a deed of bargain and sale, and received instructions for that purpose, both from the Plaintiffs and Defendant; the draft of the deed, with blanks for the date and the name of the grantee, was presented to the Defendant, and left with him for inspection; after examining it, he returned it to the attorney, requesting him to insert his, the Defendants, name in the proper blanks, which he accordingly did. This draught of the deed recited the title of the Plaintiffs, and that the Defendant, being the highest bidder, had purchased the premises at the sum of 4,000 dollars, which he had secured to be paid to the Plaintiff's, according to the terms of sale.

The breach of the agreement alleged in the declaration, was, that the Defendant had failed to give his promissory notes within the 30 days, or at any time afterwards.

The Court below decided that the Plaintiffs could maintain no action upon the contract, without first resorting to a *re-sale* and ascertaining the deficit.

JONES, *for the Plaintiffs in error,* contended.

1. That the remedy by a re-sale, was cumulative,

and did not take away the right of action for a breach of the original contract.

2. That the draught of the deed (as to its collateral effect, as written evidence of the agreement) having been authenticated by an act equivalent to signing, imported a substantive and positive agreement to go on with the contract, and to complete the purchase, and was not subject to be explained or controlled by the original terms.

The authority to contract, he said, might be by parol, although the contract must be in writing. *Roberts on frauds*, 112.—*Sugden on Vendors*, 56.—Hoban gave the attorney verbal authority to draw the deed, which amounts to an agreement in writing signed.

There was no argument for the Defendant in error.

*March 3d....*LIVINGSTON, *J.* delivered the opinion of the Court as follows:

If there ever existed a valid agreement between these parties in relation to the house in question, on which the Court gives no opinion, the terms of it must be sought for in the articles exhibited by the auctioneer, at the time of sale. Of these, two only bear on this case. These were, " that the purchaser should secure the pur-" chase money with interest by his promissory notes, " with two approved indorsers, payable in 6 and 12 " months"—and " that the purchaser should be allowed " thirty days to comply with these terms, at which " time, in case of compliance, he was to receive a good " and complete title to the property, and on failing to " comply within the thirty days, the property was then " to be re-sold on account of the first purchaser."

The Plaintiffs offered no evidence of any re-sale, or of any deficiency arising thereon, but contended, that the remedy by a re-sale was merely cumulative, and did not take away the right of action against the Defendant, for his violation of the contract.—Such is not the opinion of this Court. The vendee, by the terms of sale, had an option of taking the estate after it was bid off to him, and in case of refusal, of having it sold again

WEBSTER & FORD *v.* HOBAN.

*on his account*—It might have produced more than on the first sale, in which case the surplus would have belonged to him; or the same price might have been obtained, and then he would have lost nothing—or it might have sold for less, and then by paying the difference which would have formed his whole loss, he would not have been exposed, as he must be, if this action proceeds to have damages assessed against him, by some uncertain and arbitrary or unsatisfactory rule, which might be adopted by a jury. Of these advantages which were reserved to him by the terms of the auction, the Plaintiff had no right to deprive him. The Court is further of opinion, that nothing which was done after the sale, at all varied the right of the parties. The judgment below is affirmed with costs.